OPINION
Defendants-appellants, D B Imports, Ltd., David Kaminecki and Benjamin Kaminecki appeal the April 24, 2001 entry of the Franklin County Court of Common Pleas, entering default judgment against appellants. For the reasons that follow, we affirm.
Appellants operated a haunted attraction in Coney Island, New York. On March 11, 2000, appellants entered into a purchase contract with plaintiff-appellee, The Scarefactory, Inc. ("Scarefactory") for the purchase of goods. The total purchase price, after discounts, totaled $28,166.50. On May 1, 2000, appellants executed a promissory note for the principal amount of $10,166.50 in exchange for goods manufactured by Scarefactory. Pursuant to the executed promissory note, appellants agreed to pay Scarefactory $10,166.50 on or before July 7, 2000. The day after the promissory note was executed, appellants charged to their American Express credit card $18,166.50 of the $28,166.50 owed to Scarefactory for the goods purchased. Along with the May 1, 2000 promissory note, appellants gave Scarefactory a company check post-dated for July 7, 2000, in the amount of $10,000.[1]
On July 7, 2000, the promissory note became due. Scarefactory deposited appellants' company check in its account. On July 14, 2000, the bank informed Scarefactory that appellants' company check was being returned because appellants had stopped payment on the check. On July 18, 2000, Scarefactory contacted appellants and informed them that they had defaulted on the promissory note. Appellants represented to Scarefactory that they would pay for the goods. Appellants did not keep their promise. On or about August 2, 2000, American Express informed Scarefactory that appellants were disputing $10,166.50 of the $18,166.50 charged to appellants' American Express card.
On October 2, 2000, Scarefactory filed a complaint against appellants alleging that appellants' failure to pay Scarefactory for the goods constituted a breach of contract. Scarefactory alleged it sustained damages in the amount of no less than $20,166.50, plus interest. On November 1, 2000, appellants contacted Scarefactory to request a thirty-day extension to file their answer. Scarefactory agreed to the extension of time, and the parties filed a stipulation to the extension with the trial court on November 1, 2000. On November 30, 2000, appellants requested and Scarefactory agreed to a second request for extension of time to allow appellants additional time to answer. Appellants had until December 15, 2000 to file an answer.
On or about December 12, 2000, counsel for appellants contacted Scarefactory to request a third extension of time to file an answer. Scarefactory denied appellants' request. On December 15, 2000, appellants filed a motion for leave to plead, answer or otherwise move requesting an additional thirty days to answer Scarefactory's complaint. The trial court denied appellants' request, stating "because the time to file has passed, without an appropriate explanation and because this is a request for an ex-parte order, the motion is [denied]." (Judgment Entry dated December 26, 2000, at 1.)
On January 5, 2001, Scarefactory filed a motion for default judgment against appellants D B Imports, Ltd. and David Kaminecki. On January 12, 2001, instead of responding to Scarefactory's motion for default judgment, appellants filed a motion for leave to file answer instanter, and a motion for leave to file motion to dismiss instanter. On January 24, 2001, Scarefactory filed a memorandum contra to both of appellants' motions. On February 26, 2001, the trial court denied both of appellants' motions, stating:
 * * * In its [December 26, 2000] Judgment Entry, the Court expressly stated that it would not grant leave without "an appropriate explanation" of why the Defendants failed to timely answer or move. In both of the instant motions, the Defendants state that they reside out of state and only recently retained an attorney. The Court does not consider the Defendants' statement to be an appropriate explanation. [Decision denying defendant's Motion for Leave to File Answer Instanter, filed January 12, 2001 and Decision denying defendants' Motion for Leave to File Motion to Dismiss Instanter, filed January 12, 2001 dated February 26, 2001, at 1-2.]
On March 13, 2001, appellants filed a motion for reconsideration asserting the doctrine of excusable neglect pursuant to Civ.R. 6(B). Appellants argued that, because they lacked the familiarity with counsel in the state of Ohio; because they were required to appear in court two states away; because they were unfamiliar with the court system and the required time to respond; and because they had difficulty obtaining local counsel, their neglect in responding to Scarefactory's complaint was excusable. On March 20, 2001, Scarefactory filed a memorandum contra to appellants' motion for reconsideration in which appellants responded to on April 2, 2001. On April 24, 2001, the trial court filed an entry for default judgment ordering Scarefactory to recover from appellants D B Imports, Ltd. and David Kaminecki, jointly and severally, the amount of $16,046.22.[2] On April 25, 2001, the trial court denied appellants' motion for reconsideration finding that appellants' "conduct fell substantially below what is reasonable" and that appellants "provided no evidence, by way of affidavit or otherwise, in their motion" to support their claim of excusable neglect. (Decision Denying Defendants' Motion for Reconsideration, filed March 13, 2001, dated April 25, 2001, at 3.)
It is from this entry that appellants appeal, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN REFUSING TO ALLOW THE APPELLANTS TO ANSWER, DEFEND OR OTHERWISE PLEAD WHEN THEIR STATUS AS OUT-OF-STATE DEFENDANTS PREVENTED THEM FROM PROCURING COUNSEL UNTIL AFTER THE ANSWER DATE HAD PASSED.
 II. THE TRIAL COURT ERRED IN GRANTING DEFAULT JUDGMENT AGAINST APPELLANTS WHEN IT FAILED TO GIVE THEM THE REQUISITE NOTICE AS REQUIRED BY BOTH CIV.R. 55(A) AND LOC.R. 55.01 OF THE COURT OF COMMON PLEAS OF FRANKLIN COUNTY.
In its first assignment of error, appellants argue that the trial court abused its discretion in denying appellants' motion for reconsideration when appellants demonstrated that their actions constituted excusable neglect.
An abuse of discretion connotes more than an error of judgment; it implies a decision that is arbitrary or capricious, one that is without a reasonable basis or clearly wrong. Pembaur v. Leis (1982),1 Ohio St.3d 89; Wise v. Ohio Motor Vehicle Dealers Bd. (1995),106 Ohio App.3d 562, 565; In re Ghali (1992), 83 Ohio App.3d 460, 466; Beacon Journal Pub. Co. v. Stow (1986), 25 Ohio St.3d 347; Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219 (an abuse of discretion connotes more than error on the part of the trial court, it denotes a decision which is unreasonable, arbitrary or unconscionable). "An abuse of discretion involves far more than a difference in opinion. The term `discretion' itself involves the idea of choice, of an exercise of will, of a determination made between competing considerations." Willson v. Bd. of Trustees of Ohio State Univ. (Dec. 24, 1991), Franklin App. No. 91AP-144, unreported.
In its April 25, 2001 decision, the trial court held that Scarefactory "agreed to two extensions totaling forty-five days. The Defendants did not obtain local counsel until the end of the second extension period. The Court finds such conduct substantially below what is reasonable under the circumstances. Additionally, the Court notes that the Defendants provided no evidence, by way of affidavit or otherwise, in their motion" to support their claim of excusable neglect under Civ.R. 6(B). Civ.R. 6(B) reads in pertinent part, as follows:
 (B) Time: extension. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Rule 50(B), Rule 59(B), Rule 59(D) and Rule 60(B), except to the extent and under the conditions stated in them.
Civ.R. 6(B) permits the trial court to extend the time for filing a responsive motion after the prescribed time for filing has expired, upon a showing that the failure to timely file was the result of excusable neglect. However, it does not mandate that the court grant the extension of time to file, especially where the appellant has given no indication that the failure to timely file was the result of excusable neglect. Civ.R. 6(B). When determining whether neglect in filing an answer is excusable or inexcusable, a court must consider all of the surrounding facts and circumstances. Griffey v. Rajan (1987), 33 Ohio St.3d 75. Inexcusable neglect under Civ.R. 6(B)(2) has been described as conduct that falls substantially below what is reasonable under the circumstances. State ex rel. Weiss v. Indus. Comm. (1992),65 Ohio St.3d 470, 473, citing GTE Automatic Elec. v. ARC Industries, Inc. (1976), 47 Ohio St.2d 146, 152. In addition, despite the presence of special or unusual circumstances, many courts have declined to grant relief from judgment based upon excusable neglect "if the party or his attorney could have controlled or guarded against the happening of the special or unusual circumstance." Vanest v. Pillsbury Co. (1997),124 Ohio App.3d 525, 536, citing, e.g., Caruso-Ciresi, Inc. v. Lohman (1984), 5 Ohio St.3d 64; Griffey, supra.
In this case, Scarefactory filed its complaint on October 2, 2000, and served a copy of the complaint and summons by certified mail on appellants. David Kaminecki was served with a copy of the complaint and summons on October 27, 2000.[3] Appellants received two extensions of time, totaling forty-five days, in which to file their answer. Scarefactory opposed the third request for an extension asserting its concern with the unnecessary delay created by appellants.
Appellants argue that the trial court abused its discretion in denying appellants' motion for reconsideration in not finding that their actions constituted excusable neglect. Although appellants provided a laundry list of reasons as to why they were unable to respond to Scarefactory's complaint, the trial court nonetheless determined that appellants' conduct fell substantially below what is reasonable and appellants provided no evidentiary support, attached to its motion for reconsideration, to demonstrate excusable neglect. As such, the trial court did not act unreasonable, arbitrary, or unconscionable when it denied appellants' motion for reconsideration. Appellants' first assignment of error is overruled.
In their second assignment of error, appellants assert that the trial court erred in entering a default judgment without first giving notice and holding a hearing, citing Breeding v. Herberger (1992),81 Ohio App.3d 419. The trial court in Breeding sustained plaintiffs' motion for default judgment without waiting the required time or giving the requisite notice to defendants. Judge Whiteside held that the trial court erred when it ruled on plaintiffs' motion for default judgment without giving the defendants the requisite notice required by both Civ.R. 55(A) and Loc.R. 55.01, affording defendants the opportunity to be heard, and without hearing and ruling on defendants' motion for leave to file their answer instanter. Id. at 423. Here, appellants argue that, pursuant to Loc.R. 55.01, they should have received written notice of the hearing with the indicated date and time of the hearing.
Scarefactory contends that Loc.R. 21.01 specifically states that oral hearings on motions are not permitted and, since Scarefactory did not submit a written request for a hearing, the trial court did not abuse its discretion in failing to conduct a hearing on Scarefactory's motion for default judgment. Furthermore, Scarefactory contends that nothing in Civ.R. 55(A) or Loc.R. 55.01 require the trial court to hold a hearing on Scarefactory's motion for default judgment. Scarefactory argues that both provisions provide that the trial court has within its discretion whether or not to conduct a hearing when determining the amount and award of damages.
Here, Scarefactory filed a motion for default judgment on January 5, 2001. The trial court did not rule on Scarefactory's motion until April 24, 2001. Pursuant to Loc.R. 21.01:
 * * * On the 28th day after the motion is filed, the motion shall be deemed submitted to the Trial Judge. Oral hearings on motions are not permitted except upon leave of the Trial Judge upon written request by a party. * * *
More than twenty-eight days elapsed before the trial judge ruled on the motion for default judgment. During that time, appellants did not respond to Scarefactory's motion. Instead, appellants filed on January 12, 2001 two separate motions with the trial court; a motion for leave to file answer instanter, and a motion for leave to file a motion to dismiss instanter. After the trial court denied both of appellants' motions, appellants filed a motion for reconsideration on March 13, 2001, which was denied on April 25, 2001. Neither of the three motions filed by appellants made mention of Scarefactory's motion for default judgment. Appellants were put on notice of Scarefactory's motion for default judgment on January 5, 2001. Appellants were given more than three months to respond to Scarefactory's motion for default judgment, but failed to do so.
Civ.R. 55(A) makes it discretionary with the trial court to decide if a hearing was necessary. Buckeye Supply Co. v. Northeast Drilling Co. (1985), 24 Ohio App.3d 134. Unless requested by Scarefactory, an oral hearing is not required. Loc.R. 3.04(1). Here, Scarefactory did not request an oral hearing, therefore, pursuant to Loc.R. 21.01, the matter was automatically set for a "non-oral hearing". Ramson's Imports, Inc. v. Chheda (Jan. 10, 1984), Franklin App. No. 83AP-566, unreported; City of Columbus v. Kahrl (Mar. 12, 1996), Franklin App. No. 95AP-1204, unreported. As such, Civ.R. 55(A) and Loc.R. 55.01, did not require the requisite notice for a "non-oral hearing" as required for an oral hearing. "It is acceptable practice * * * for trial courts to dispose of motions without formal hearing, so long as due process rights are afforded." Buckeye Supply Co., at 136; Civ.R. 7(B)(2).
In this case, without an evidentiary hearing, the trial court was able to ascertain the amount of damages Scarefactory sustained as a result of appellants' breach of contract. Attached to Scarefactory's complaint, was a sales order summary that indicated the discounted purchase price of $28,166.50.[4] (Complaint, Exhibit B.) Appellants have not suggested error in the amount of judgment granted by the trial court, and have not demonstrated any prejudice resulting from the failure of the trial court to hold an evidentiary hearing. See Curtis v. O'Brien (Mar. 24, 1988), Franklin App. No. 87AP-969, unreported, jurisdictional motion overruled by 39 Ohio St.3d 721. As such, appellants' second assignment of error is overruled.
For the foregoing reasons, appellants' first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
TYACK, P.J., and DESHLER, J., concur.
[1] Appellants guaranteed that there would be sufficient funds available in their account to cover the $10,000 company check. In the May 1, 2000 promissory note, appellants promised that "[i]n the event this note shall be in default and placed for collection, then the undersigned agree to pay all reasonable attorney fees and costs of collection. Should the above referenced check be refused for any reason by Borrower's financial institution and some other means of transferring the principle [sic] amount of this note into The Scarefactory's account are not made within five (5) days of due date Borrower shall be subject to a late charge of 10% of said principal."
[2] It has been brought to the attention of this court that, on November 5, 2001, the trial court issued a judgment entry and order of default judgment against Benjamin Kaminecki ordering him to pay Scarefactory $15,225. A notice of appeal from that judgment entry has been docketed in case No. 01AP-1395. Accordingly, it appears that the trial court has completely determined that underlying matter.
[3] The complaint and summons issued to D B Imports, Ltd. was returned, and marked "refused." The complaint and summons issued to Benjamin Kaminecki was returned without any notation. Pursuant to Civ.R. 4.3(B)(1), service on D B Imports, Ltd. was complete upon the filing of an affidavit on December 1, 2000. Additionally, concurrently with Scarefactory's motion for default judgment, filed January 5, 2001, service was complete on Benjamin Kaminecki by filing an affidavit pursuant to Civ.R. 4.3(B)(1).
[4] The sales order summary also included the deposit amount to be applied to appellants' credit card on May 1, 2000, and the amount of the promissory note to be paid on or before July 7, 2000.